# COPY



APR **2 4** 2018

CHRIS DEROSE, CLERK
N. BUTZBACH
DEPUTY CLERK

1  Richard P. Traulsen – State Bar #016050
   **BEGAM, MARKS & TRAULSEN P.A.**
2  11201 North Tatum Blvd., Suite 110
   Phoenix, Arizona  85028-6037
3  (602) 254-6071
   rtraulsen@bmt-law.com
4
   Raymond P. Boucher CA Bar No. 115364
5  Brian M. Bush CA Bar No. 294713
   (Admitted Pro Hac Vice)
6  **BOUCHER LLP**
   21600 Oxnard Street, Suite 600
7  Woodland Hills, California 91367-4903
   Tel:   (818) 340-5400
8  Fax:   (818) 340-5401
   *ray@boucher.la*
9  *bush@boucher.la*
   Attorneys for Plaintiffs
10
## SUPERIOR COURT OF THE STATE OF ARIZONA
11
### COUNTY OF MARICOPA
12
   CARMEN ELECTRA, an individual,           NO. CV2018-052188
13  HILLARY HEPNER, an individual,
   JESSICA BURCIAGA, an individual,         **COMPLAINT**
14  LUCY PINDER,
   an individual, MELANIE IGLESIAS, an       1. **Misappropriation of Likeness**
15  individual,
                                             2. **Violation of the Lanham Act, 15
16          Plaintiffs,                          U.S.C. § 1125(a)**
17  v.                                        3. **False Light Invasion of Privacy**
18  IDAHO BUSINESS HOLDINGS, LLC
   d/b/a ELITE CABARET, an Arizona
19  Corporation; and DOES 1 through 20,
   inclusive,
20
            Defendants.
21
22                  **INTRODUCTION**
23      1.    Plaintiffs  are  CARMEN  ELECTRA,  HILARY  HEPNER,  JESSICA
24  BURCIAGA, LUCY PINDER and MELANIE IGLESIAS (collectively herein referred to as
25  "Plaintiffs"). They are professional models, business women, and well-known social media
26  personalities.
27      2.    Defendants are IDAHO BUSINESS HOLDINGS, LLC d/b/a ELITE CABARET
28  (hereinafter the "Defendant Club", "the Club" or "ELITE CABARET"), and DOES 1 through

20, inclusive, agents of Defendant Club and/or presently unnamed third parties who upon information and belief are responsible for the misappropriation of Plaintiff's images and likenesses as alleged in this Complaint (collectively herein referred to as "Defendants").

3. Defendants have pirated and altered the images, likeness and/or identity of each Plaintiff, and posted the same in advertisements or promotions and on Defendant Club's websites including its social media platforms, for purely self-serving commercial purposes.

4. Having operated a business in the adult entertainment industry, Defendants were, or should have been, well aware of the standard negotiation process over terms of use, conditions of release, licensing issues, and other contractual incidences related to use and exploitation of images for Defendants' commercial benefit.

5. Despite being well aware of an obligation to do so, Defendants never negotiated for or purchased any image of any Plaintiff. On the contrary, Defendants circumvented the typical arms-length negotiation process entirely and pirated the images. In doing so, Defendants deprived each Plaintiff of the right to say "no," to protect her image, brand and reputation, and gained a windfall by using and altering the images of professional and successful models for Defendants' own commercial purposes without having to compensate the models a single penny for such usage.

6. Had each Plaintiff been afforded the opportunity to consider whether to consent and release rights as to the use or alteration of any image to Defendants for the promotion of the Defendant Club, each Plaintiff would have promptly and enthusiastically declined to do so.

7. Defendants' misappropriation of Plaintiffs' likenesses, furthermore, encouraged among the public and Defendants' business invitees and patrons the false perception that each Plaintiff endorses, supports, participates in or attends the types of events hosted at the Defendant Club.

8. Defendants' conduct is misleading and deceptive. Defendants' conduct is injurious to each Plaintiff by falsely and fraudulently representing that each Plaintiff depicted in the misappropriated images is somehow affiliated with Defendants, has contracted to perform at and/or participate in events at the Defendant Club and/or has been hired to

1 | promote, advertise, market or endorse the Defendant Club, its business and services of being a

2 | partially nude strip/gentlemen's club and other activities offered at the Club. They also create

3 | the false and fraudulent perception that each Plaintiff depicted in the advertisements will

4 | attend each event and participate in the activities advertised.

5 |       9.     By using the Plaintiffs' images without authority or consent as alleged in this

6 | Complaint, Defendants have jeopardized each Plaintiff's professional image, brand and

7 | marketability.

8 |      10.    Defendants' conduct has also deprived each Plaintiff the opportunity to engage

9 | in arms-length negotiations regarding the terms and conditions of use of their images,

10 | including the term of any release, remuneration per image or use, or the ability to decline the

11 | business opportunity entirely.

12 | **JURISDICTION AND VENUE**

13 |      11.    This case arises under state law and jurisdiction is appropriate in the Superior

14 | Court for the State of Arizona pursuant to Article VI § 14 of the Arizona Constitution, and

15 | ARS § 12-123.

16 |      12.    Additionally, as a court of general jurisdiction pursuant to the Arizona

17 | Constitution this Court has concurrent jurisdiction over Plaintiffs' Lanham Act (15 U.S.C. §

18 | 1125(a)(1)(A)) claim because no law gives federal courts exclusive jurisdiction over this cause

19 | of action.

20 |      13.    Venue is proper in this Court pursuant to ARS § 12-401 because Defendant

21 | IDAHO BUSINESS HOLDINGS, LLC resides in Maricopa County.

22 | **PARTIES**

23 | **Plaintiffs:**

24 |      Plaintiff CARMEN ELECTRA ("ELECTRA") is, and at all times relevant to this

25 | action was, a professional model and resident of Los Angeles, California. ELECTRA is, and at

26 | all times relevant to this action, an American model, actress, business woman, TV personality,

27 | spokesperson and celebrity. She was a *Playboy* Playmate. ELECTRA has appeared on

28 | countless magazine covers, editorials and TV commercials. She has her own range of products

including a signature fragrance line and workout video. As an actress, ELECTRA starred on the TV show "*Baywatch*", and she danced with the *Pussycat Dolls*. She has been featured in films such as, "*Scary Movie*", "*Date Movie*", "*Meet the Spartans*" and "*Disaster Movie*". She has also hosted MTV's Spring Break specials. On social media, ELECTRA has over 4 million combined followers on Twitter, Facebook and Instagram.

14.     Plaintiff HILLARY HEPNER ("HEPNER") is, and at all times relevant to this action was, an American model, spokeswoman and actor. HEPNER has appeared in *Playboy, Playboy Intimates, 944 Vegas, American Curves, Vegas Weekly, Hooters* and *Kandy* magazines. She has been in the Alpha Cuts Pro Fitness Ad, the Lapdance Lingerie Catalog, and on the Twilight Park Ads/Billboard in Woodlake, CA. She appears in the Rockstar Energy Drink Calendar, as Miss Sport Football, Spencer's Nationwide Window Valentine Campaign, Cyber Girl Xtra, Miss Playboy Club, NEYROT Model of the Month, Earth Cam Model, Miss Budweiser Bikini Bash, and the Hooters Calendar. She appears in the National Hooters Christmas Commercial and has starred in a Ciroc Vodka Commercial with P. Diddy and in the Paul Oakenfold music video "Finally". She is featured on SportsIllustrated.com and has been named in Top 10 Supermodels.

15.     Plaintiff JESSICA BURCIAGA ("BURCIAGA") is, and at all times relevant to this action was, an American model, business woman, actress, and spokesperson. She was a *Playboy* Playmate. She resides in Atlanta, Georgia. BURCIAGA'S business ventures include a women's online clothing boutique, (www.SailorandSaint.com), a successful hair accessory company, Burciaga Blends (https://www.bellamihair.com/pages/jessica-burciaga) and a popular kitsch brand (crushglow.com). As a model, BURCIAGA has appeared in magazines, such as *Maxim, Playboy, Stuff, Import Tuner, Modified Magazine, Performance Auto & Sound, Show Latina*, and *Lowrider.* She has appeared as a Ring Girl in EA Sport's "Sports Fight Night Round 3" video game. As an actress, BURCIAGA has appeared as herself in several episodes of "*The Girls Next Door*", a reality television series. BURCIAGA also has more than 1.7 million Instagram followers, 200,000 Twitter subscribers, and 300,000 followers on Facebook.

16.     Plaintiff LUCY PINDER ("PINDER") is, and all times relevant to this action was, an English model, actress, spokesperson, host and reality television star. As a model, PINDER has appeared in numerous magazines including *FHM*, *Loaded*, the *Daily Star*, on *FHM's* list of the "100 Sexiest Women in the World" for three straight years and appeared on the final cover of *Nuts*. PINDER has been featured on large international advertising campaigns for major brands such as Unilever (Lynx) and Camelot (National Lottery). As an actress, PINDER appeared as a contestant on the television shows "*Celebrity Big Brother*", "*I'm Famous and Frightened*", "*Soccer AM*", "*Weakest Link*", "*Hotel Babylon*", "*Dream Team*", and "*Bo! in the USA*". She was a presenter on MTV's "*TMF*" and was the host of "*Nuts TV*". She has starred in the films "*The Seventeenth Kind*", "*Age of Kill*" and "*Warrior Savitri*". PINDER has a combined total of close to 2.1 million followers on her Facebook, Instagram and Twitter accounts.

17.     Plaintiff MELANIE IGLESIAS ("IGLESIAS") is, and at all times relevant to this action was, an American model, spokeswoman, host and actress. She is a resident of Toluca Lake, California. IGLESIAS has been featured in magazines such as *World's Most Beautiful*, *Esquire*, *Vibe* and *Maxim* where she was voted as *Maxim*'s Hometown Hotties. As a spokesperson and actor, IGLESIAS appeared in the World Poker Tour series, on all seasons of "*Guy Code and Girl Code*" on MTV, stars in "*Guy Court*" on MTV, hosted the MLB Fan Cave, appeared as a guest on the Ellen DeGeneres show and starred in the feature film "*Abnormal Attraction*". IGLESIAS has 1.3 million followers on Instagram and more than 1.6 million followers on Facebook.

**Defendants:**

18.     Based on publicly available records, and further upon information and belief, Defendant IDAHO BUSINESS HOLDINGS, LLC, operating and doing business as ELITE CABARET is a limited liability corporation organized and existing under the laws of the State of Arizona with its principal place of business located at 910 N. McClintock Dr., Tempe, Arizona 85281.

19.     At all relevant times mentioned herein the Defendant Club held itself out and

has held itself out to be a Gentleman's Club (i.e., a strip club) that engages in the business of entertaining its patrons with beverage sales and sales of dance and other performances by topless women at ELITE CABARET Gentlemen's Club in Tempe, Arizona .

20.     Plaintiffs are unaware of the true names and capacities of Defendants named herein as unidentified DOES 1 through 20, inclusive (hereinafter referred to as "DOES"), and, therefore, sues such Defendants by such fictitious names. Plaintiffs will seek leave of court to amend this Complaint when the true names of said Defendants are ascertained. Plaintiffs are informed and believe and on such information and belief allege that each of the Defendants named by such a fictitious names at all times mentioned in this complaint were, the agent(s), servant(s), or employer of each of the other Defendants and that, in doing the acts alleged herein, were acting within the course and scope of said agency, service, or employment, and with the permission and consent of each of the other Defendants, and are, in some manner, responsible for the acts and omissions as alleged herein and are, therefore, liable to Plaintiffs for the damages alleged herein.

## FACTUAL ALLEGATIONS AS TO ALL CAUSES OF ACTION

**Defendants Use Website and Social Media Platforms for Marketing:**

21.     Upon information and belief, the Defendant Club coordinates its advertising, marketing and promotional activities through, among other things, active and dynamic use of its website, among others, and various coordinated social media promotions through Facebook, Twitter, Instagram and Tumblr pages ("Social Media Accounts"), among others.

22.     Defendants' marketing and promotional activities are publicly accessible through the World Wide Web, various social media outlets and affirmative prospect marketing.

23.     Plaintiffs are informed and believe and on such information allege that Defendants further promote their business by and through the use of marketing strategies including, but not limited to, the following: social media (such as Instagram [with 2,440 followers], and Facebook [with 5,814 followers]); flyers, commercials, and posters. At all times relevant to this Complaint Defendants had actual and exclusive control over the contents

contained within and/or displayed on each of said marketing devices.

24.     Upon information and belief, Defendant manages, operates and/or controls a "Facebook page" (accessible via the URL: https://www.facebook.com/elitecabaretAZ/) through which it promotes, endorses, and markets its business, solicits customers and advertises events for the Club. Said website identifies the Defendant Club as being "One Of The Most Popular Adult Cabarets In Arizona". Defendants have at all times relevant to this Complaint exercised actual control over the contents displayed on its Facebook page through their own personal acts of posting items on the Facebook page, or by expressly permitting and condoning another person(s)' act of posting items on the Facebook page.

25.     Upon information and belief, Defendant manages, operates and/or controls an "Instagram account" (accessible via the URL: https://www.instagram.com/elitecabaret_az/) through which it promotes, endorses, and markets its business, solicits customers and advertises events for the Club. Said website identifies the Defendant Club as being "Arizona's Only Indoor/Outdoor Gentlemen's Club with the Hottest Girls!". Defendants have at all times relevant to this Complaint exercised actual control over the contents displayed on its Instagram account through their own personal acts of posting items on the Instagram Account, or by expressly permitting and condoning another person(s)' act of posting items on the Instagram account.

26.     Upon information and belief, Defendant manages, operates and/or controls a website (accessible via the URL: http://www.elitecabaret.com) through which it promotes, endorses, and markets its business, solicits customers and advertises events for the Club. Said website identifies the Defendant Club as being "Arizona's Elite Adult Entertainment Destination…Showcasing Beautiful And Friendly Ladies". Defendants have at all times relevant to this Complaint exercised actual control over the contents displayed on its website through their own personal acts of posting items on the website, or by expressly permitting and condoning another person(s)' act of posting items on the website.

27.     Defendants have used each Plaintiffs' images and likenesses in advertisements and marketing displays on Defendant's social media accounts to generate additional revenue,

1 increase sales, and promote the patronage of the Defendant Club.

2 **Plaintiffs Are Professional Models and Their Images Are Commercially Valuable:**

3     28.    Each Plaintiff is a professional model who earns a living by promoting her
4 image and likeness to select clients, companies, commercial brands, media, social media and
5 entertainment outlets for the advertisement of products and services, as well as the promotion
6 of their own reputation and brand for modeling, acting, hosting, and other opportunities.

7     29.    Each Plaintiff's career in modeling, acting, and/or private enterprise has value
8 stemming from the goodwill and reputation each has built, all of which is critical to
9 establishing a brand, being selected for jobs and maximizing earnings.

10     30.    Each Plaintiff commands substantial sums of money for the licensed commercial
11 use of her image.

12     31.    A model's reputation directly impacts the commercial value associated with the
13 use of ones' image, likeness, or identity to promote a product or service and as such, Arizona
14 common law has recognized that the person has the right to control the commercial
15 exploitation of her name, likeness and identity.

16     32.    Each Plaintiff is a professional model in the ordinary course. Each Plaintiff
17 seeks to control the commercial use and dissemination of her image and, thus, actively
18 participates in vetting and selecting modeling, acting, brand spokesperson, or hosting
19 engagements.

20     33.    In the modeling industry, reputation is critical. Endorsing, promoting,
21 advertising or marketing the "wrong" product, or working in a disreputable industry can
22 severely impact a model's career by limiting or foreclosing future modeling or brand
23 endorsement opportunities. Conversely, association with high-end companies, products, or
24 magazines can enhance and amplify a model's earning potential and career opportunities by
25 making a model more sought after and desirable.

26     34.    As set forth below, each Plaintiff's image, likeness and/or identity has been
27 misappropriated and intentionally altered by or at the direction of the Defendants, without
28 Plaintiffs' consent for use in its online marketing scheme designed to promote the Defendant

1  Club.

2  **The Misappropriated Images:**

3      35.    The Defendant Club unlawfully posted and/or displayed the Plaintiff's image

4  and likeness at least fifteen times, on either their website, Facebook page and Instagram page,

5  in connection with advertising ELITE CABARET.

6      36.    Defendants posted ELECTRA's image and likeness on Defendant Club's

7  Facebook page on or about May 4, 2015 and November 16, 2015. Defendants also posted

8  Plaintiff ELECTRA's image and likeness on Defendant Club's Instagram page on or about

9  May 4, 2015 and November 16, 2015.

10      a.    Defendants' use was unauthorized and for a commercial purpose.

11      b.    ELECTRA is readily identifiable in the misappropriated image. No

12      reasonable person in Defendants' position would mistakenly believe that

13      Plaintiff was an employee or agent of the Club or otherwise affiliated

14      with the Club.

15      c.    Defendants never hired or contracted with ELECTRA to advertise,

16      promote, market or endorse the Defendant Club.

17      d.    ELECTRA has never been employed by Defendants or contracted with

18      Defendants to participate in events at the Club.

19      e.    Defendants never sought permission or authority to use or alter

20      ELECTRA's image, likeness or identity to advertise, promote, market or

21      endorse the Defendant Club.

22      f.    ELECTRA never gave permission, or assigned, licensed or otherwise

23      consented to Defendants using or altering her image, likeness or identity

24      to advertise, promote, market or endorse the Defendant Club.

25      g.    Defendants neither offered nor paid any remuneration to ELECTRA for

26      the unauthorized use or her image.

27      h.    Defendant's use and alteration of ELECTRA's image creates the false

28      perception that ELECTRA had consented or agreed to promote,

advertise, market and/or endorse the Defendant Club to the benefit Defendants' commercial interests.

37.   Defendants posted PINDER's image and likeness on Defendant Club's Facebook page and Instagram page on or about June 13, 2015.

    a.   Defendants' use was unauthorized and for a commercial purpose.

    b.   PINDER is readily identifiable in the misappropriated image. No reasonable person in Defendants' position would mistakenly believe that Plaintiff was an employee or agent of the Club or otherwise affiliated with the Club.

    c.   Defendants never hired or contracted with PINDER to advertise, promote, market or endorse the Defendant Club.

    d.   PINDER has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

    e.   Defendants never sought permission or authority to use or alter PINDER's image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

    f.   PINDER never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

    g.   Defendants neither offered nor paid any remuneration to PINDER for the unauthorized use or her image.

    h.   Defendant's use and alteration of PINDER's image creates the false perception that PINDER had consented or agreed to promote, advertise, market and/or endorse the Defendant Club to the benefit Defendants' commercial interests.

38.   Defendants posted HEPNER's image and likeness on Defendant Club's Facebook page on or about August 4, 2015, September 16, 2015 and November 30, 2016. Defendants also posted HEPNER's image and likeness on Defendant Club's Instagram page

10

on or about August 4, 2015 and September 16, 2015.

    a.    Defendants' use was unauthorized and for a commercial purpose.

    b.    HEPNER is readily identifiable in the misappropriated image. No reasonable person in Defendants' position would mistakenly believe that Plaintiff was an employee or agent of the Club or otherwise affiliated with the Club.

    c.    Defendants never hired or contracted with HEPNER to advertise, promote, market or endorse the Defendant Club.

    d.    HEPNER has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

    e.    Defendants never sought permission or authority to use or alter HEPNER's image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

    f.    HEPNER never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

    g.    Defendants neither offered nor paid any remuneration to HEPNER for the unauthorized use or her image.

    h.    Defendant's use and alteration of HEPNER's image creates the false perception that HEPNER had consented or agreed to promote, advertise, market and/or endorse the Defendant Club to the benefit Defendants' commercial interests.

39.    Defendants posted BURCIAGA's image and likeness on Defendant Club's Facebook page on or about January 16, 2016, January 22, 2017 and January 27, 2017.

    a.    Defendants' use was unauthorized and for a commercial purpose.

    b.    BURCIAGA is readily identifiable in the misappropriated image. No reasonable person in Defendants' position would mistakenly believe that Plaintiff was an employee or agent of the Club or otherwise affiliated

with the Club.

c.    Defendants never hired or contracted with BURCIAGA to advertise, promote, market or endorse the Defendant Club.

d.    BURCIAGA has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

e.    Defendants never sought permission or authority to use or alter BURCIAGA's image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

f.    BURCIAGA never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

g.    Defendants neither offered nor paid any remuneration to BURCIAGA for the unauthorized use or her image.

h.    Defendant's use and alteration of BURCIAGA's image creates the false perception that BURCIAGA had consented or agreed to promote, advertise, market and/or endorse the Defendant Club to the benefit Defendants' commercial interests.

40.    On or about May 25, 2016, Defendants posted IGLESIAS' image and likeness on Defendant Club's Facebook page.

a.    Defendants' use was unauthorized and for a commercial purpose.

b.    IGLESIAS is readily identifiable in the misappropriated image. No reasonable person in Defendants' position would mistakenly believe that Plaintiff was an employee or agent of the Club or otherwise affiliated with the Club.

c.    Defendants never hired or contracted with IGLESIAS to advertise, promote, market or endorse the Defendant Club.

d.    IGLESIAS has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

e.  Defendants never sought permission or authority to use or alter IGLESIAS' image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

f.  IGLESIAS never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

g.  Defendants neither offered nor paid any remuneration to IGLESIAS for the unauthorized use or her image.

h.  Defendant's use and alteration of IGLESIAS' image creates the false perception that IGLESIAS had consented or agreed to promote, advertise, market and/or endorse the Defendant Club to the benefit Defendants' commercial interests.

## COUNT I

### Violation of Common Law Right of Publicity: Misappropriation of Likeness

### (Plaintiffs IGLESIAS, HEPNER and BURCIAGA vs. All Defendants)

41.  Plaintiffs hereby incorporate by reference each and every allegation set forth in the foregoing paragraphs as if fully alleged herein.

42.  Arizona recognizes a common law right of publicity whereby Plaintiffs hold the exclusive right to control the public dissemination of their name and likeness for commercial use.

43.  Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of the Plaintiffs without their express consent to such use.

44.  Nevertheless, in violation of Arizona law, Defendants published, printed, displayed and/or publicly used the Plaintiffs' images, likenesses and identity on their website and social media outlets, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Defendant Club, and its events and activities.

45.     Each of the Plaintiff's faces and/or body are shown in each advertisement, and are clearly lighted and readily identifiable and distinguishable.

46.     Plaintiffs never consented to Defendants' use of their images, likenesses or identities for any purpose.

47.     Defendants misappropriated Plaintiffs' images in clandestine fashion without their knowledge and without even attempting to acquire Plaintiffs' permission.

48.     The Defendants acted intentionally by selecting Plaintiffs' images and, knowing they did not have permission to use the images for commercial gain, by posting the images to Defendants' social media platforms and/or website in an effort to market the Defendant Club and its activities and events; in the alternative, and at a minimum, the Defendant Club acted with reckless indifference to Plaintiffs' legal rights by expressly permitting, allowing and condoning Doe Defendants 1-20 to post Plaintiffs' images on its website and/or social media platforms for the purpose of marketing and advertising the Club.

49.     Defendants are in the adult entertainment business, and knew or should have known of the standard negotiation process over terms of use, conditions of release, licensing issues, and other contractual incidences related to use and exploitation of a professional model's image and likeness for Defendants' commercial benefit.

50.     Nonetheless, Defendants circumvented the appropriate licensing and negotiating process thereby avoiding payment to Plaintiffs, the cost of a photoshoot, payments to Plaintiffs agents or agencies, and the cost of licensing, totaling a substantial sum of money and resulting in a windfall for Defendants.

51.     Defendants have caused and will continue to cause irreparable harm to the Plaintiffs, their reputations and brands by attributing to Plaintiffs their involvement with Strip Clubs, nude entertainment, and Plaintiffs' association in such activities.

52.     Defendants also have damaged the Plaintiffs as a direct and proximate result of their unauthorized use of their images, likenesses and/or identity without compensating the Plaintiffs, thereby entitling Plaintiffs to recover in money damages the actual and fair market value of each misappropriated use of their likenesses in an amount to be established by proof

at trial.

53.    As a further direct and proximate result of Defendants' conduct as alleged herein, Defendants have earned and withheld profits attributable directly or indirectly to the unlawful use of Plaintiffs' images, entitling Plaintiffs to disgorgement of those ill-gotten gains in an amount to be established by proof at trial.

## COUNT II

### Violation of the Lanham Act, 15 U.S.C. § 1125(a)

### (*All Plaintiffs vs. All Defendants*)

54.    Plaintiffs hereby incorporate by reference each and every allegation set forth in the foregoing paragraphs as if fully alleged herein.

55.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a)(1)(B).

56.    Defendants used Plaintiffs' images, likenesses and/or identities as described herein without authority in order to create the perception that the Plaintiffs' worked at or was otherwise affiliated with the Defendant Club, endorsed the Club or the Club's business activities, and/or consented to or authorized Defendants' or the Club's usage of their images in order to advertise, promote, and market the Defendant Club and Defendants' business activities.

57.    Defendants' use and alteration of the Plaintiffs' images, likenesses and/or identities to advertise, promote and market Defendants' business, the Club, and/or the Club's events and activities as described in this Complaint was false and misleading.

58.    Defendants' unauthorized use and alteration of the Plaintiff's images, likenesses and/or identities as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that the Plaintiffs worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of their images in order to

advertise, promote, and market Defendants' business or the Club's events and activities and/or that the Plaintiffs would participate in or appear at the specific events promoted in the advertisement.

59.     Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Club, as to the general quality of attendees and participants at the Club and in its events, as well as specifically whether the Plaintiffs worked at or were otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or would appear in person at the Defendant Club's events and activities.

60.     Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether the Plaintiffs worked at or were otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage of her images in order to promote Defendants' business or the Club's events and activities.

61.     Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to visit the Club and participate in events at the Club and had a material effect and impact on the decision of patrons and prospective patrons to visit Defendants' business establishment.

62.     Defendants' advertisements, promotions and marketing of the Club and events at the Club occur in and are targeted to interstate commerce. Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from several different states across the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure traffic and patronage to their establishment.

63.     Defendants' unauthorized use of the Plaintiffs' images, likenesses and/or identities as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

64.     Defendants knew or should have known that their unauthorized use of the

Plaintiffs' images, likenesses and/or identities would cause consumer confusion as described in this Complaint.

65. Defendants' unauthorized use and alteration of the Plaintiff's images, likenesses and/or identities, as described herein violates 15 U.S.C. §1125(a) and was wrongful.

66. Defendants' wrongful conduct as described herein was willful.

67. Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive the Plaintiffs of their property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to the Plaintiffs.

68. The method and manner in which Defendants used the images of the Plaintiffs further evinces that Defendants were aware of and/or consciously disregarded the fact that the Plaintiffs did not consent to Defendants' use of the images to advertise Defendants' business.

69. Defendants have caused and will continue to cause irreparable harm to the Plaintiff's, their reputations and brand by attributing to the Plaintiff's their involvement with Strip Clubs, nude entertainment, and Plaintiff's association in such activities.

70. Defendants also have damaged the Plaintiffs as a direct and proximate result of their unauthorized use of their images, likenesses and/or identity without compensating the Plaintiffs, thereby entitling Plaintiffs to recover in money damages the actual and fair market value of each misappropriated use of their likenesses in an amount to be established by proof at trial.

71. As a further direct and proximate result of Defendants' conduct as alleged herein, Defendants have earned and withheld profits attributable directly or indirectly to the unlawful use of Plaintiffs' images, entitling Plaintiffs to disgorgement of those ill-gotten gains in an amount to be established by proof at trial.

72. Defendants' conduct was purposeful and malicious in that Defendants knowingly violated Plaintiffs' rights solely to benefit their business, increase profits, and avoid paying money to legally acquire the right to commercial use of the Plaintiffs' images, and consequently, exceptional relief is warranted pursuant to 15 U.S.C. §§ 1116, and 1117(a),

1   entitling Plaintiffs to treble damages and reasonable attorneys' fees.

2   ## COUNT III

3   ### False Light Invasion of Privacy

4   **(Plaintiffs IGLESIAS, HEPNER and BURCIAGA vs. All Defendants)**

5       73.    Plaintiffs hereby incorporate by reference each and every allegation set forth in
6   the foregoing paragraphs as if fully alleged herein.

7       74.    Defendants' posting of Plaintiffs' images on its website and/or social media
8   platforms, as alleged, created the false and misleading impression that Plaintiffs approved of
9   and participated in some manner in the Defendant Club's business activities, i.e., selling
10  access to nude and partially nude female dancers and entertainers.

11      75.    This impression is both misleading and false.

12      76.    The misappropriated images were published by Defendants on the World Wide
13  Web and/or publicly accessible and viewable social media platforms, and thus, constituted
14  public statements.

15      77.    The impression created about the Plaintiffs would be highly offensive to a
16  reasonable person.

17      78.    Defendants knew their unauthorized usages of the Plaintiff's images, likenesses
18  and/or identity was misleading. Defendants knew that Plaintiffs never worked at the
19  Defendant Club, promoted the Defendant Club, or authorized the Defendant Club to use their
20  likenesses to advance Defendants' business interests. Defendants nevertheless posted and/or
21  authorized the posting of the images of Plaintiffs with impunity.

22      79.    Defendants' conduct was willful, driven by the impulse to save thousands of
23  dollars on hiring its own models and photographers and acquiring the appropriate licensing to
24  use those models' images in their advertisements and promotions.

25      80.    Defendants acted with reckless indifference about whether the posting of
26  Plaintiffs' images, as alleged, would create a false and misleading impression about the
27  Plaintiffs.

28      81.    As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered

1  harm to their professional reputation as well as general damages including mental and
2  emotional damages.

3      82.    Defendants acted with malice; their conduct was purely profit driven and in
4  reckless and callous disregard to placing Plaintiffs in a false light and giving the impression
5  that Plaintiffs were involved in, agreed with, and condoned the activity of stripping for or
6  providing adult entertainment to Defendants' business invitees. Accordingly, Defendants'
7  conduct warrants the imposition of punitive damages to the fullest extent permitted by law.

8  **<ins>PRAYER FOR RELIEF</ins>**

9      WHEREFORE, each Plaintiff individually respectfully prays that this Court grant
10 Judgment to each Plaintiff, respectively, and against Defendants, jointly and severally, and
11 awards as follows:

12     1.    As to Count I, actual damages and disgorgement of profits attributable to
13         Defendants' misappropriation of the Plaintiff's likeness;

14     2.    As to Count II, actual damages and disgorgement of profits attributable to
15         Defendants' misappropriation of the Plaintiff's likeness, as well as treble
16         damages and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1116, and
17         1117(a);

18     3.    As to Count III, appropriate compensatory damages for the Plaintiff's emotional
19         and mental suffering and harm to professional reputation;

20     4.    As to Count III, an award of appropriate punitive damages;

21     5.    As to Counts I and II, prejudgment interest on the sum at the appropriate legal
22         rate;

23     6.    For costs of suit; and

24     7.    For such other and further relief as the Court deems just.

25

26

27

28

1

## JURY DEMAND

2      WHEREFORE, each Plaintiff individually and collectively demands a jury trial on all

3  causes and all issues so triable.

4      DATED this 23rd day of April, 2018.

5                    **BEGAM MARKS & TRAULSEN, P.A.**

6

7

8      By_____

         Richard P. Traulsen
9        11201 North Tatum Blvd.
         Suite 110
10       Phoenix, Arizona 85028

11     **BOUCHER LLP**

12     Raymond P. Boucher
       Brian M. Bush
13     21600 Oxnard Street, Suite 600
       Woodland Hills, California 91367-4903

14
       Attorneys for Plaintiffs
15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  Richard P. Traulsen – State Bar #016050
   **BEGAM, MARKS & TRAULSEN P.A.**
2  11201 North Tatum Blvd., Suite 110
   Phoenix, Arizona  85028-6037
3  (602) 254-6071
   rtraulsen@bmt-law.com
4
   Raymond P. Boucher CA Bar No. 115364
5  Brian M. Bush CA Bar No. 294713
   (Admitted Pro Hac Vice)
6  **BOUCHER LLP**
   21600 Oxnard Street, Suite 600
7  Woodland Hills, California 91367-4903
   Tel:   (818) 340-5400
8  Fax:   (818) 340-5401
   ray@boucher.la
9  bush@boucher.la

10  Attorneys for Plaintiffs

11          **SUPERIOR COURT OF THE STATE OF ARIZONA**

12               **COUNTY OF MARICOPA**

13  CARMEN ELECTRA, an individual,
    HILLARY HEPNER, an individual,          NO.  CV2018-052188
14  JESSICA BURCIAGA, an individual,
    LUCY PINDER,                            **SUMMONS**
15  an individual, MELANIE IGLESIAS, an
    individual,
16                                          If you would like legal advice from a lawyer,
                                            contact the Lawyer Referral Service at
17              Plaintiffs,                            602-257-4434
                                                          or
18  v.                                       www.maricopalawyers.org
                                                 Sponsored by the
19  IDAHO BUSINESS HOLDINGS, LLC         Maricopa County Bar Association
    d/b/a ELITE CABARET, an Arizona
20  Corporation; and DOES 1 through 20,
    inclusive,
21
                Defendants.
22

23  THE STATE OF ARIZONA TO DEFENDANT: IDAHO BUSINESS HOLDINGS, LLC
                                        d/b/a ELITE CABARET

24          YOU ARE HEREBY SUMMONED and required to appear and defend, within
25  the time applicable, in this action in this Court. If served within Arizona, you shall appear and
    defend within 20 days after the service of the Summons and Complaint upon you, exclusive of
26  the day of service. If served out of the State of Arizona - whether by direct service, by
    registered or certified mail, or by publication - you shall appear and defend within 30 days
27  after the service of the Summons and Complaint upon you is complete, exclusive of the day of
    service. Where process is served upon the Arizona Director of Insurance as an insurer's
28  attorney to receive service of legal process against it in this state, the insurer shall not be
    required to appear, answer or plead until expiration of 40 days after the date of such service

upon the Director. Service by registered or certified mail within the State of Arizona is complete 30 days after the date of filing the receipt and affidavit of service with the Court. Service by publication is complete 30 days after the date of first publication. Direct service is complete when made. Service upon the Arizona Motor Vehicle Superintendent is complete 30 days after filing the Affidavit of Compliance and return receipt or Officer's Return. RCP 4; ARS Sections 20-222, 28-502, 28-503.

YOU ARE HEREBY NOTIFIED that in case of your failure to appear and defend within the time applicable, judgment by default may be rendered against you for the relief demanded in the Complaint.

YOU ARE CAUTIONED that in order to appear and defend, you must file an Answer or proper response in writing with the Clerk of this Court, accompanied by the necessary filing fee, within the time required, and you are required to serve a copy of any Answer or response upon the plaintiffs' attorney. RCP 10(D); ARS Section 12-311; RCP 5.

Requests for reasonable accommodation for persons with disabilities must be made to the division assigned to the case by the party needing accommodation or his/her counsel at least 3 judicial days in advance of a scheduled proceeding. Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least 10 judicial days in advance of a scheduled court proceeding.

The name and address of Plaintiffs attorney is:

Richard P. Traulsen
**BEGAM, MARKS & TRAULEN, P. A.**
11201 North Tatum Blvd. Suite 110
Phoenix, Arizona  85028-6037

Raymond P. Boucher
Brian M. Bush
**BOUCHER LLP**
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903

SIGNED AND SEALED this date:_____

CLERK                          **COPY**

By_____          APR 2 4 2018
Deputy Clerk

METHOD OF SERVICE:
[X] Private Process Service

CHRIS DEROSE, CLERK
N. BUTZBACH
DEPUTY CLERK

2

1    Richard P. Traulsen – State Bar #016050
     **BEGAM, MARKS & TRAULSEN P.A.**
2    11201 North Tatum Blvd., Suite 110
     Phoenix, Arizona  85028-6037
3    (602) 254-6071
     rtraulsen@bmt-law.com
4
     Raymond P. Boucher CA Bar No. 115364
5    Brian M. Bush CA Bar No. 294713
     (Admitted Pro Hac Vice)
6    **BOUCHER LLP**
     21600 Oxnard Street, Suite 600
7    Woodland Hills, California 91367-4903
     Tel:   (818) 340-5400
8    Fax:   (818) 340-5401
     *ray@boucher.la*
9    *bush@boucher.la*

10   Attorneys for Plaintiffs

11                **SUPERIOR COURT OF THE STATE OF ARIZONA**

12                        **COUNTY OF MARICOPA**

13   CARMEN ELECTRA, an individual,        NO. CV2018-052188
     HILLARY HEPNER, an individual,
14   JESSICA BURCIAGA, an individual,      **PLAINTIFFS' CERTIFICATE RE:**
     LUCY PINDER,                          **COMPULSORY ARBITRATION**
15   an individual, MELANIE IGLESIAS, an
     individual,
16
                       Plaintiffs,
17
     v.
18
     IDAHO BUSINESS HOLDINGS, LLC
19   d/b/a ELITE CABARET, an Arizona
     Corporation; and DOES 1 through 20,
20   inclusive,
21
                       Defendants.
22

23

24         The undersigned certifies that he knows the dollar limits and any other limitations set

25   forth by the local rules of practice for the applicable superior court, and further certifies that

26   this case is not subject to compulsory arbitration, as provided by Rules 72 through 76 of the

27   Arizona Rules of Civil Procedure.

28

**COPY**

APR 2 4 2018

CHRIS DEROSE, CLERK
N. BUTZBACH
DEPUTY CLERK

1

2

3      DATED this 23rd day of April, 2018.

4                    **BEGAM MARKS & TRAULSEN, P.A.**

5

6

7      By _____
       Richard P. Traulsen
8      11201 North Tatum Blvd.
       Suite 110
9      Phoenix, Arizona  85028

10     **BOUCHER LLP**

11     Raymond P. Boucher
       Brian M. Bush
12     21600 Oxnard Street, Suite 600
       Woodland Hills, California 91367-4903

13     Attorneys for Plaintiffs

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

David W. Dow (SBA #007377)
Jennifer L. Levine (SBA #033071)
**DOW LAW OFFICE**
3104 E. Camelback #281
Phoenix, Arizona 85016
Office: 480-776-5039
Fax: 480-945-0553
ddowlaw1@gmail.com
jlevine@ddowlaw.com
*Attorneys for the Defendant Idaho Business Holdings LLC.*

## SUPERIOR COURT OF THE STATE OF ARIZONA

## COUNTY OF MARICOPA

| | |
|---|---|
| CARMEN ELECTRA, an individual; HILLARY HEPNER, an individual; JESSICA BURCIAGA, an individual; LUCY PINDER, an individual; MELANIE IGLASIAS, an individual;<br><br>       Plaintiffs,<br><br>  v.<br><br>IDAHO BUSINESS HOLDINGS, LLC d/b/a ELITE CABARET, an Arizona Corporation; and DOES 1-20, inclusive;<br><br>      Defendants. | Case No.: CV2018-052188<br><br>**NOTICE OF FILING REMOVAL FROM THE STATE OF ARIZONA COURTS** |

Defendant IDAHO BUSINESS HOLDINGS LLC, d/b/a ELITE CABARET, by and through undersigned counsel, hereby gives Notice that it has filed a Notice of Removal from The State of Arizona courts in the federal courts, Arizona District Court.

Respectfully submitted this 25th day of May, 2018.

By: /s/ David W. Dow
David W. Dow

Original efiled this 25th[d] day of May, 2018.

Copies eserved this 25th day of May, 2018 to:

Richard P. Traulsen
11201 North Tatum Blvd Suite 110
Phoenix, Arizona 85028
Attorneys for the Plaintiff

Raymond P. Boucher and Brian M. Bush
21600 Oxnard St. Suite 600
Woodland Hills, CA 91367
Attorneys for Plaintiff * pro hac vice in Arizona

By: /s/ David W. Dow

EXHIBIT E

Skip To MainContent

Search

 **WARNING:** Bogus Phone Calls, Emails May Lead to Fraud.    **Read More...**

Civil Court Case Information - Case History

## Case Information

| | | | |
|---|---|---|---|
| Case Number: | CV2018-052188 | Judge: | Hannah, John |
| File Date: | 4/24/2018 | Location: | Northeast |
| Case Type: | Civil | | |

## Party Information

| Party Name | Relationship | Sex | Attorney |
|---|---|---|---|
| Carmen Electra | Plaintiff | Female | Richard Traulsen |
| Hillary Hepner | Plaintiff | Female | Richard Traulsen |
| Jessica Burciaga | Plaintiff | Female | Richard Traulsen |
| Melanie Iglesias | Plaintiff | Female | Richard Traulsen |
| Idaho Business Holdings L L C | Defendant | | Pro Per |
| Lucy Pinder | Plaintiff | Female | Richard Traulsen |

## Case Documents

| Filing Date | Description | Docket Date | Filing Party |
|---|---|---|---|
| 5/16/2018 | AFS - Affidavit Of Service | 5/21/2018 | |
| **NOTE:** IDAHO BUSINESS HOLDINGS LLC | | | |
| 5/16/2018 | SUM - Summons | 5/18/2018 | |
| 4/24/2018 | COM - Complaint | 4/25/2018 | |
| 4/24/2018 | CCN - Cert Arbitration - Not Subject | 4/25/2018 | |
| 4/24/2018 | CSH - Coversheet | 4/25/2018 | |

## Case Calendar

**There are no calendar events on file**

## Judgments

**There are no judgments on file**