**NOT FOR PUBLICATION**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carmen Electra, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>Idaho Business Holdings LLC, et al.,<br><br>    Defendants. | No. CV-18-01604-PHX-SRB<br><br>**ORDER** |

Pending before the Court is Plaintiffs Tara Leigh Patrick (a/k/a Carmen Electra), Jessica Burciaga, Lucy Pinder, Hillary Hepner, and Melanie Iglesias ("Plaintiffs")' Motion for Summary Judgment ("Plaintiffs' Motion") and Defendant Idaho Business Holdings, LLC (d/b/a Elite Cabaret) ("Defendant")'s Motion for Summary Judgment ("Defendant's Motion"). (Doc. 55, ("PMSJ"); Doc. 56, ("DMSJ").)  The Court heard oral argument on both Motions on September 10, 2020. (Doc. 77, Min. Ent.)

**I.     BACKGROUND**

    **A.     Factual Background**

Plaintiffs are five professional models, actresses, and social media personalities whose photos have appeared in magazines such as *Playboy*, *American Curves*, *Maxim*, *Loaded*, *Nuts*, *Esquire*, and *Vibe*. (Doc. 1-3, Compl. ¶¶ 1, 13–17.) Plaintiffs have modeled for brands such as Rockstar Energy and appeared in various television shows including *Baywatch*. (*Id.* ¶¶ 13–17.) Four Plaintiffs—Electra, Burciaga, Pinder, and Iglesias—have followers on social media numbering in the millions. (*Id.*) Plaintiff Electra has a range of

products including a signature fragrance line and workout video. (*Id.* ¶ 13.)

Plaintiffs allege that Defendant misappropriated, altered, and used without permission six images ("Images") of Plaintiffs to promote its strip club ("Elite Cabaret") on Instagram and Facebook. (*Id.* ¶¶ 35–40; *see* Doc. 55-2, Ex. B to PMSJ, at 1–15 (advertisement printouts).) Defendant's promotions (hereinafter "Advertisements") consisted of an Image of a Plaintiff next to a caption such as:

- "Let the lovely ladies at Elite Cabaret show you a good time this weekend. Stop in tonight and have a great weekend! #EliteCabaret #Afterhours"

- "Come on down to #EliteCabaret tonight and have some fun!! #Tuesday #Tempe #ASU #StripClub"

- "#HappyHumpDay everyone!  Stop into #EliteCabaret, midway through the work week!! #Tempe #ASU #stripclub #entertainment #Wednesday #WCW #HumpDay" and

- "Happy Monday! Join us to keep the party going from the weekend! Full Bar + our lovely ladies to keep you company! #EliteCabaret #Tempe #ASU #Stripclub #Monday #Entertainment"

(Ex. B to PMSJ at 1–15.) Plaintiffs allege that Defendant's Advertisements created the false impression that Plaintiffs were strippers who worked at or endorsed Elite Cabaret. (PMSJ at 3.)

## B. Procedural Background

On April 25, 2018, Plaintiffs filed their Complaint in state court, bringing four claims under three counts[1]: one claim for misappropriation of likeness under Arizona law (Count 1); two claims[2] for violation of the Lanham Act, 15 U.S.C. § 1125(a) (Count 2); and one claim for false light invasion of privacy under Arizona law (Count 3). (Compl.)

---

[1] On September 14, 2020, the Court ordered all fictitious defendants dismissed, leaving Elite Cabaret as the sole remaining defendant. (Doc. 78, 9/14/20 Order.)

[2] As it did in *Gray*, the Court construes Plaintiffs' Lanham Act count as encompassing two distinct claims: false association and false advertising. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014) (two bases of liability created under § 1125(a)).

Plaintiffs seek actual damages, disgorgement of profits, treble damages under Count 2, compensatory damages, punitive damages, costs and fees, and prejudgment interest. (*Id.* at 19.) On May 25, 2018, Defendant removed this case to federal court. (Doc. 1, Not. of Rem.) Following discovery, Plaintiffs moved to preclude the testimony of Defendant's expert Michael Einhorn and Defendant moved to preclude the testimony of Plaintiff's expert Stephen Chamberlin and the testimony and survey evidence of Plaintiff's expert Martin Buncher. (Doc. 53; Doc. 61, Doc. 63.) The Court denies each Motion in an order filed contemporaneously with this Order.

On May 18, 2020, Plaintiffs and Defendant moved for summary judgment. (PMSJ; DMSJ.) On June 17, 2020, Plaintiffs filed their Opposition to Defendant's Motion. (Doc. 63, ("Pls.' Opp'n").) On June 18, 2020, Defendant filed its Opposition[3] to Plaintiffs' Motion. (Doc. 64, ("Def.'s Opp'n").) On July 2, 2020, Plaintiffs and Defendant filed their respective Replies. (Doc. 67, ("Pls.' Reply"); Doc.68, ("Def.'s Reply").) The Court heard oral argument on both Motions on September 10, 2020. (Doc. 77, Min. Ent.)

## II. SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material "only if it might affect the outcome of the suit under the governing law." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014). A dispute is genuine "only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Id*. The Court "tak[es] the evidence and all reasonable inferences in the light most favorable to the non-moving party." *Karasek v. Regents of the Univ. of Cal.*, 948 F.3d 1150, 1161 (9th Cir. 2020).

The moving party bears the initial burden of identifying the portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v.*

---

[3] The Court, in its discretion, rejects Plaintiffs' request to strike Defendant's Opposition for its failure to comply with the Court's April 2019 protective order. (*See* Pls.' Reply at 2–3); LRCiv 83.1(f).

*Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its initial burden, the opposing party must establish the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). There is no issue for trial unless enough evidence favors the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249–50. At the same time, the evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. A party cannot create a genuine issue for trial based solely upon subjective belief. *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996).

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations and internal punctuation marks omitted). This means that a plaintiff must establish "beyond controversy" that it can show "every essential element" of its claim based on the undisputed facts. *See S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003). By the same token, a defendant is entitled to summary judgment where it establishes that the plaintiff will be unable to show at least one element of its claim in light of the undisputed facts. *Celotex Corp.*, 477 U.S. at 322–23. This distinction reflects that the burden is ultimately on the plaintiff to prove each claim. *See id.*; *S. Cal. Gas Co.*, 336 F.3d at 888; 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Fed. Prac. & Proc.* § 2727.1 (4th ed. 2016).

**III.   LEGAL ANALYSIS**

Plaintiffs and Defendant request summary judgment on every count. Given the significant overlap in analysis, the Court groups the parties' arguments together by issue.

**A.   State Law Claims**

Plaintiffs bring two state law claims: misappropriation of likeness (Count 1) and false light (Count 3). (Compl. ¶¶ 41–53, 73–82.) The Court considers each below.

**1.   Misappropriation of Likeness (Count 1)**

- 4 -

As a preliminary matter, the Court rejects Defendant's argument that Arizona does not recognize a claim for misappropriation for the reasons detailed in its Order in the related case of *Gray v. LG&M Holdings, LLC*.[4] (DMSJ at 7–9); *Gray* 9/23/20 Order at 4–7. The Court rejects Defendant's additional statement in this case that any common-law misappropriation claim is preempted by federal copyright law because the argument is not developed in any of Defendant's briefings. (DMSJ at 2; *see* Def.'s Opp'n; Def.'s Reply.)

The Court also rejects Defendant's argument that a one-year statute of limitations bars Plaintiffs' misappropriation claims. Relying on *In re Estate of Reynolds*,[5] Defendant argues that because invasion-of-privacy claims are subject to a one-year limitations period in Arizona, misappropriation claims, which are "one of four varieties of invasion of privacy," should also be subject to this one-year period. (DMSJ at 15.) But Defendant misconstrues the nature of a misappropriation claim. In *Estate of Reynolds*, the Arizona Court of Appeals clarified that the right of publicity—the right protected by this claim—is "[r]ooted in recognition of the commercial value of an individual's name or likeness[]" so "is in the nature of a *property* right." 327 P.3d at 215 (citing Restatement (Third) of Unfair Competition ("Restatement (Third)") § 46, cmt. g) (emphasis added). The court distinguished misappropriation claims from invasion-of-privacy claims based on their distinct underlying injuries: "the tort of appropriation" the court explained, "affords redress of commercial injuries," not "personal injuries of the sort remedied by a claim for, e.g., invasion of privacy by intrusion or publication of private facts." *Id.* (citing Restatement Third § 46, cmt. a). The difference in types of injuries underlying claims of misappropriation (commercial) and false light (reputational) render a statute of limitations governing the latter inapplicable to the former. Defendant has failed to carry its burden of

---

[4] *Gray* is another case before this Court. In *Gray*, six models, including Plaintiff Iglesias, filed a complaint against a strip club in Glendale, Arizona to recover for the use of their images without their consent in several of the strip club's advertisements. The complaints in this case and in *Gray* bring identical causes of action based on similar facts and were filed within 24 hours of each other. The parties are also represented by the same attorneys in both cases. *See Gray v. LG&M Holdings*, CV-18-02543-PHX-SRB. Doc. 122, Order filed 9/23/20 ("*Gray* 9/23/20 Order") (denying in part and granting in part plaintiffs' and defendant's motions for summary judgment).
[5] 327 P.3d 213 (Ariz. Ct. App. 2014).

proving that a statute of limitations bars Plaintiffs' misappropriation claims. *See Troutman v. Valley Nat. Bank of Ariz.*, 826 P.2d 810, 814 (Ariz. Ct. App. 1992) ("[W]hen a defendant asserts the statute of limitations as a defense, the defendant has the burden of proving that the complaint falls within the statute.").

Plaintiffs do not argue that a different limitations period should apply under Arizona law. (*See* Pls.' Opp'n at 14–15.) Rather, they argue that the continuing violation doctrine delays the start of the limitations clock for their misappropriation claims, and direct the Court to their arguments that the same doctrine tolls their false-light claims. (*Id.* at 15.) The Court, however, need not address the applicability of this doctrine to misappropriation claims because Defendant has failed to make out a prima facie case that these claims are time-barred.

The Court now turns to the merits of Plaintiffs' misappropriation claims. Plaintiffs argue that they are entitled to summary judgment because they have established every element based on the undisputed facts. To prevail on their misappropriation claims, Plaintiffs must establish: "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to the defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Pooley v. National Hole-In-One Ass'n*, 89 F.Supp.2d 1108, 1110 (D. Ariz. 2000) (citing *Eastwood v. Sup. Ct.*, 149 Cal. App. 3d 409, 415 (1983)).

Plaintiffs argue that the following undisputed facts establish their claims: (1) Defendant used each of their identities in their Advertisements by posting Plaintiffs' Images; (2) Defendants "sought and obtained a commercial advantage by using these identities by, at a minimum, getting Plaintiffs to appear for free in these [A]dvertisements"; (3) "that no Plaintiff has ever been employed by, contracted with or has otherwise given permission or consent to Defendant to use her Image to advertise, promote, market or endorse Elite"; and (4) that "each Plaintiff was injured by, at a minimum, being denied the fair market revenue she would have received but for Defendant's misappropriations." (PMSJ at 6–7.) Rather than contesting any of these elements, Defendant has limited its

challenge to the existence of the cause of action in Arizona. (Def.'s Opp'n at 5–8, 10; DMSJ at 7–9; Reply to Pls.' Opp'n at 2–4.) The Court has already rejected this argument and does not revisit it here. (*See supra* at 4–5 (citing *Gray* 9/23/20 Order at 4–7).)

The undisputed facts suffice to establish every element of Plaintiffs' misappropriation claims. Accordingly, Plaintiffs are entitled to summary judgment on these claims.

### 2.     False Light (Count 3)

Defendant and Plaintiffs agree that Plaintiffs' false-light claims are subject to a one-year statute of limitations. (DMSJ at 15; Pls.' Opp'n at 14.) Plaintiffs argue that the continuing violation doctrine applies to prevent the limitations clock from starting to run until the Advertisements were removed from Defendant's social media. (Pls.' Opp'n at 14–15.) For the reasons stated in its *Gray* 9/23/20 Order, the Court rejects Plaintiffs' argument that the continuing violation doctrine applies. *Gray* 9/23/20 Order at 8–9. The Court finds that Plaintiffs' false-light claims accrued on the date of publication and are subject to a one-year statute of limitations. *See id.* Because each Advertisement was posted over a year before Plaintiffs filed their Complaint, each false-light claim is time-barred. Defendant is entitled to summary judgment on the false-light claims.

### B.     Lanham Act Claims (Count 2)

"The Lanham Act, 15 U.S.C. § 1051 et seq., 'creates a comprehensive framework for regulating the use of trademarks and protecting them against infringement, dilution, and unfair competition.'" *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 263 (9th Cir. 2018) (quoting *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010). "The Act's two underlying purposes are to ensure that (1) 'owners of trademarks can benefit from the goodwill associated with their marks' and (2) 'consumers can distinguish among competing producers.'" *Id.* (quoting *Fortune Dynamic, Inc.*, 618 F.3d at 1030)).

Section 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a), provides:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any

>word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
>>(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>>
>>(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities
>
>shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Plaintiffs bring a false association claim under subsection (A) and a false advertising claim under subsection (B). (Compl. ¶¶ 54–72.) Both parties seek summary judgment on each claim. (PMSJ; DMSJ.)

**1.      False Association**

Since 1992, the Ninth Circuit has recognized a cause of action for celebrities under § 1125(a)(1)(A) for false association (called "celebrity false endorsement") when their celebrity personas are misrepresented as endorsing or associating a company or product. *See Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1110 (9th Cir. 1992). To prevail on their false association claims, Plaintiffs must prove that Defendant: "(1) use[d] in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of his or another person's goods or services." *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007).

The first two elements are met by the undisputed fact that Defendant used photos of Plaintiffs in commerce. *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1007 (9th Cir. 2001) (first and second elements not in issue when defendant published photograph of plaintiffs in magazine advertising t-shirts similar to t-shirt worn by plaintiffs in photograph). The parties disagree about whether Plaintiffs have established the third

element—likelihood of confusion.

To determine the likelihood of confusion, courts look to eight factors:

>(1) strength of plaintiff's mark;
>(2) the relatedness of the goods;
>(3) the similarity of the marks;
>(4) evidence of actual confusion;
>(5) marketing channels used;
>(6) likely degree of purchaser care;
>(7) defendant's intent on selecting the mark; and
>(8) likelihood of expansion of the product lines.

*White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395, 1401 (9th Cir. 1992), *as amended* (Aug. 19, 1992). These factors "are not necessarily of equal importance, nor do they necessarily apply to every case." *Downing*, 265 F.3d at 1008. They are simply "guideposts." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1210 (9th Cir. 2012) (quoting *Fortune*, 618 F.3d at 1030). The Court considers each factor in turn.

### i.     Strength of Plaintiffs' Marks

In celebrity-endorsement cases, "mark" means the "celebrity's persona" and a mark's "strength" refers to "the level of recognition the celebrity enjoys among members of society" at whom the ad "was directed." *White*, 971 F.2d at 1400. The more recognizable the celebrity is among the relevant population, the higher the risk of consumer confusion and the stronger her mark. *See id.* For example, the Ninth Circuit has found that the hostess of *Wheel of Fortune* has a strong mark when her likeness is used in a television commercial because she is easily recognized by television watchers. *Id.* In contrast, a country singer who writes and performs songs only in Southern states has a weak mark when his likeness is portrayed in a television show broadcasted nationally. *Newton v. Thomason*, 22 F.3d 1455, 1460, 1462 (9th Cir. 1994).

The strength of each Plaintiff's mark is a triable issue. Because Defendant posted its Advertisements on social media, the relevant population is users of social media. (*See* Ex. A at 1–15 (advertisement printouts).) Plaintiffs differ greatly in their number of social media followers. (Compl. ¶¶ 12, 15, 16 (Plaintiff Electra has over 4 million followers; Plaintiff Pinder, 2 million; Plaintiff Hepner, no followers alleged).) Additionally,

Plaintiff's expert Martin Buncher reports that in a group of randomly sampled adult internet users "selected from the metropolitan area surrounding the Club location" who had "patronized a Bikini Bar/Gentlemen's/Adult Dance and Night Club/Strip Club in the past two years," 15.5% on average recognized Plaintiffs.[6] (Doc. 63-2, Ex. B to MTS-Buncher, at 8.)

The jury could conclude that since 15.5% of respondents recognized Plaintiffs, Plaintiffs have a strong mark; or it could conclude than since 84.5% of respondents did not recognize Plaintiffs, Plaintiffs are too obscure. Or the jury could attribute little weight to any percentages from Mr. Buncher's survey based on problems with the representativeness of the sample or with the methodology. *See Scott v. Citizen Watch Co. of Am., Inc.*, No. 17-CV-00436-NC, 2018 WL 1626773, at *9 (N.D. Cal. Apr. 4, 2018) (finding triable issue of fact as to likelihood of confusion where plaintiff "offer[ed] evidence that at least some consumers knew of [plaintiff] . . . , were excited to buy the watch because of its connection to [plaintiff], and may actually have believed [plaintiff] endorsed the product"); *cf. Lemon v. Harlem Globetrotters Int'l, Inc.*, 437 F. Supp. 2d 1089, 1096 (D. Ariz. 2006) (noting that absence of "evidence that actual or potential consumers of the [product] recognize [p]laintiffs" meant that this factor favored defendants). And differences in each Plaintiff's social media followers and work history might make the jury more inclined to find, for example, Plaintiff Electra more recognizable than Plaintiff Hepner. This factor presents a genuine dispute.

This dispute is also material. *See White*, 971 F.2d at 1400 (stating that if a plaintiff is "unknown to the segment of the public at whom [a defendant's] ads are directed," then that "segment could not be confused as to whether she was endorsing [defendant's product]"). The strength of each Plaintiff's mark is thus a triable issue. *See Fresno Motors, LLC*, 771 F.3d at 1125 (summary judgment improper "where divergent ultimate inferences may reasonably be drawn from the undisputed facts").

---

[6] In an order filed contemporaneously with this Order, the Court rejects Defendant's arguments that Mr. Buncher's report and testimony should be precluded. (*See* Def.'s Opp'n at 4–5 (arguing again that Buncher report and testimony should not be considered).)

### ii. Relatedness of the Goods

In celebrity-endorsement cases, "goods" means "the reasons for or source of the celebrity's fame." *Downing*, 265 F.3d at 1007 (citation omitted). This factor assesses how related a celebrity's fame is to the defendant's product. *Id*. In *Downing*, the Ninth Circuit stated that this factor could favor plaintiffs when their "fame is due to their surfing success" and that their success in surfing "could be seen as closely-related to the [defendant]'s surf-related clothing." *Id*. at 1008.

Plaintiffs argue that this factor favors them because "the parties target the same or similar market by and through the use of social media and are competitors in this regard as well." (PMSJ at 16.) Defendant disagrees, arguing that "[its] product is providing entertainment at a gentlemen's club" and emphasizing that "Plaintiffs have argued that their fame is patently unrelated to such goods/products." (DMSJ at 11.) Both parties make compelling arguments. On the one hand, the modeling and strip-club industries share a common feature: both emphasize appearance and profit off the sexualization of women's bodies. What makes a successful model makes for an attractive stripper. A jury could reasonably conclude that Defendant chose Plaintiffs' photos precisely to capitalize on this shared feature. But so, too, could a jury reasonably conclude that the fundamentally different natures of modeling and operating a strip club make Plaintiffs' fame too attenuated to Defendant's business. This factor presents a triable issue.

### iii. Similarity of the Marks

Because Defendant used actual Images of Plaintiffs, this factor undisputedly favors Plaintiffs. *See Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1069 (9th Cir. 2015) ("No one disputes the third factor: [defendant] used actual photos of [the celebrity] on its merchandise."); *see also Downing*, 265 F.3d at 1008 ("Applying the third factor, the similarity of the likeness, to the [plaintiffs] is clear because it is an actual photograph of the [plaintiffs] with their names designated.").

### iv. Evidence of Actual Confusion

"Evidence that use of the two marks has already led to confusion is persuasive proof

that future confusion is likely." *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 352 (9th Cir. 1979). Plaintiffs argue that the results of Mr. Buncher's survey indicate that, of those surveyed: 75% "believed Plaintiffs had some affiliation, connection, or association with Elite"; 85% "believed Plaintiffs had agreed to sponsor, endorse or promote Elite"; 87% "believed Plaintiffs approved the use of their [I]mages to promote Elite"; 78% "believe[d] that Plaintiffs enjoyed a lifestyle like that reflected in the [A]dvertisements"; and 73% "believed that Plaintiffs would be participating in events at Elite." (PMSJ at 17.) Plaintiffs argue that these findings are sufficient to establish actual confusion.

Defendant challenges the survey's reliability and methodology and argues that without the survey evidence, Plaintiffs cannot establish actual confusion. (Def.'s Opp'n at 4–5, 9; DMSJ at 11–12.) But the Court has found the survey reliable and relevant; Defendant may challenge its weight by attacking its methodology at trial. Based on the survey results, a jury could reasonably find evidence of actual confusion. Conversely, a jury could reasonably attribute little weight to the survey results if it finds the methodology faulty. What weight to give the survey results, and whether those results are sufficient to demonstrate actual confusion, are triable issues.

### v. Marketing Channels Used

The only marketing channel used by Defendant was social media. This factor, rather than "favoring" or "disfavoring" one side or the other, serves to narrow the jury's focus by honing the inquiry. *Downing*, 265 F.3d at 1008 ("It is therefore the likelihood of confusion in that marketing channel that is at issue."). In this case, the appropriate inquiry is whether social media users, as opposed to consumers more generally, are likely to be confused by Defendant's Advertisements. *See id.*

### vi. Likely Degree of Purchaser Care

If Defendant's "consumers are [not] likely to be particularly careful in determining who endorses [Cabaret Elite]," confusion about Plaintiffs' endorsement is more likely. *See Downing*, 265 F.3d at 1008. In *Downing*, the court noted that people who buy the defendant's surf-related clothing are more likely to be young, and "[a] jury could

reasonably find that young consumers are not likely to be particularly careful when purchasing surf-related clothing." *Id*. The court stated that young, less careful consumers might be more likely than others to misconstrue the plaintiffs' presence in the defendant's advertisement as an endorsement. *Id.* Here, a jury could reasonably find that strip-club patrons are less discerning, or less careful, than others. Or, it could reasonably find the opposite. This factor presents a triable issue.

### vii. Defendant's Intent in Selecting the Mark

"As to the seventh factor, the relevant question is whether the [d]efendants intended to profit by confusing consumers concerning the endorsement of [its product]." *Downing*, 265 F.3d at 1008. This factor bears less on determining the "likelihood of confusion" than it does on "fashioning a remedy." *AMF Inc.*, 599 F.2d at 354 ("Good faith is less probative of the likelihood of confusion, yet may be given considerable weight in fashioning a remedy."). Ascertaining Defendant's intent is an objective, not subjective, inquiry. *See, e.g.*, *id.*; *White*, 971 F.2d at 1400–01.

Plaintiffs point to the Advertisements themselves as "obvious" evidence that Defendant intended to profit off of the use of their Images. (PMSJ at 17.) Defendant simply stresses Plaintiffs' lack of subjective proof of Defendant's intentions. (DMSJ at 12.) While the caselaw is clear that Defendant's intent to profit may be inferred from the Advertisements themselves, Plaintiffs have not established "beyond controversy" that this was Defendant's intent. *See White*, 971 F.2d at 1400–01 (examining the defendant's advertisements to determine defendant's intent in featuring robot with celebrity likeness in the advertisements). This factor presents a triable issue.

### viii. Likelihood of Expansion of Product Lines

"[T]he eighth factor, 'likelihood of expansion of the product lines,' does not appear apposite to a celebrity endorsement[.]" *Id.* at 1401. This is one such case; this factor is irrelevant.

### ix. Conclusion

Plaintiffs have not established "beyond controversy" that the relevant consumers—

- 13 -

users of social media—were likely to be confused by Defendant's use of their Images. *See Wendt v. Host Int'l, Inc*., 125 F.3d 806, 812 (9th Cir. 1997) (summary judgment disfavored and granted only "sparingly" because issue of likelihood of confusion is predominately factual). But neither has Defendant shown that Plaintiffs will *not* be able to make this showing. The Court thus denies summary judgment for Plaintiffs and Defendant, and reserves the issue of likelihood of confusion for trial.

## 2. False Advertising

To succeed on their false adverting claims, Plaintiffs must prove:

(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product;

(2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience;

(3) the deception is material, in that it is likely to influence the purchasing decision;

(4) the defendant caused its false statement to enter interstate commerce; and

(5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by lessening of the goodwill associated with its products.

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc*., 758 F.3d 1069, 1071–72 (9th Cir. 2014), *as amended* (Mar. 11, 2014) (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)). Plaintiffs argue that they have established every element; Defendant argues that Plaintiffs did not properly plead this claim,[7] lack statutory standing, and cannot prove any element. (PMSJ at 9–12; Def.'s Opp'n at 8–9.) The Court agrees with Defendant that Plaintiffs lack statutory standing.

### i. Statutory Standing

In *Lexmark International, Inc. v. Static Control Components, Inc*., the Supreme Court outlined a two-part test to determine whether a plaintiff may bring a Lanham Act false advertising claim. 572 U.S. 118 (2014). First, the plaintiff's injury must come within

---

[7] As previously mentioned, the Court construes Plaintiffs' Complaint as encompassing two claims under the Lanham Act. (*Supra* at 8 n.2.)

- 14 -

the "zone of interests" protected by the Act. *Id.* at 131–32. An injury comes within this zone when it is "an injury to a commercial interest in reputation or sales." *Id.* Second, this injury must be proximately caused by the defendant's conduct. *Id.* at 133. A plaintiff establishes proximate cause by demonstrating "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising" which "occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.*

Plaintiffs fail the first prong. Plaintiffs argue that "at minimum[,] each Plaintiff has been injured by being deprived of the fair market revenue she would have received but for Defendant's misappropriations." (PMSJ at 12; Pls.' Reply at 8.) But Plaintiffs' interest in receiving fair market value is not within the zone of interests protected by a false advertising claim. The Lanham Act was enacted to protect consumers and competitors through its regulation of unfair competition. *Pellegrini v. Ne. Univ.*, No. 12-CV-40141-TSH, 2013 WL 5607019, at *3 (D. Mass. Aug. 23, 2013) ("The statute was designed to protect consumers and competitors from any advertising or packaging that results in unfair competition."); *Shepard v. European Pressphoto Agency*, 291 F. Supp. 3d 465, 469 (S.D.N.Y. 2017) (contrasting "copyright—which protects authors' rights in their creations" with "unfair competition laws—which protect consumers from, inter alia, confusion as to the origin of goods[]"). Plaintiffs, who are not suing as consumers,[8] may invoke the Lanham Act's protection only as market participants seeking to protect their trade against unfair competition. *See Lexmark Int'l, Inc.*, 572 U.S. at 131 ("A typical false-advertising case will implicate only the Lanham Act's goal of 'protecting persons engaged in commerce within the control of Congress against unfair competition.'" (brackets removed)). The Lanham Act does not protect Plaintiffs' rights, as consumers, to receive fair market value for use of their Images.

---

[8] Indeed, Plaintiffs *cannot* sue in their capacity as consumers. *See Made in the USA Foundation v. Phillips Foods, Inc.*, 365 F.3d 278, 280 (4th Cir. 2004) (collecting cases and noting that every circuit court to consider the question, including the Ninth, has found that consumers cannot sue under the Lanham Act); *Barrus v. Sylvania*, 55 F.3d 468, 470 (9th Cir. 1995) (consumers lack standing to bring false advertising claim under Lanham Act).

Plaintiffs also fail the second prong. Plaintiffs have not alleged (much less proved) that Defendant's Advertisements "cause[d] [consumers] to withhold trade from the plaintiff[s]." *See Lexmark Int'l, Inc.*, 572 U.S. at 133–34; *id.* at 140 ("Although we conclude that Static Control has *alleged* an adequate basis to proceed under § 1125(a), it cannot obtain relief without *evidence* of injury proximately caused by Lexmark's alleged misrepresentations.").

Plaintiffs cannot prove that they have statutory standing to bring a false advertising claim under the Lanham Act. Accordingly, the Court will grant summary judgment for Defendant on these claims. *See Geiger*, 2020 WL 3545560, at *14 (denying false advertising claims); *Geiger v. Creative Impact Inc.*, No. CV-18-01443-PHX-JAT, 2020 WL 4583625 (D. Ariz. Aug. 10, 2020) (affirming denial of false advertising claim on reconsideration under *Lexmark* two-part test).

### C. Collateral Estoppel

Defendant argues that Plaintiffs Burciaga and Pinder are precluded from arguing various specific issues following orders issued in two cases in the Southern District of New York. (DMSJ at 16 (citing *Toth v. 59 Murray Enters.*, 15 Civ. 8028 (NRB), 2019 U.S. Dist. LEXIS 1355 (S.D.N.Y. Jan. 3, 2019) and *Gibson v. SCE Group, Inc., d/b/a Sin City Cabaret*, 391 F. Supp. 3d 228, 238 (S.D.N.Y. 2019).) But the only common plaintiff between *Toth* and this case is Plaintiff Electra, who was awarded summary judgment on her Lanham Act claim in *Toth*; and the only common plaintiff between *Gibson* and this case is Plaintiff Burciaga, who was awarded summary judgment on her right of publicity claim in *Gibson*. The Court rejects Defendant's argument as underdeveloped and inaccurate.

### IV. CONCLUSION

The Court grants summary judgment for Plaintiffs and denies summary judgment for Defendant on Count 1 because Plaintiffs have established beyond controversy that Defendant misappropriated their likeness in violation of Arizona law, and Defendant has not demonstrated that Plaintiffs will be unable to prove any element. The Court denies

summary judgment for Plaintiffs and grants summary judgment for Defendant on Count 3 because each false-light claim is time-barred. The Court denies summary judgment for Plaintiffs and Defendant on the false association claims brought under Count 2 because whether Defendant's Advertisements were "likely to cause confusion" among the relevant consumers is a triable issue. The Court denies summary judgment for Plaintiffs and grants summary judgment for Defendant on the false advertising claims brought under Count 2 because Defendant has established that Plaintiffs cannot prove statutory standing to bring these claims.

**IT IS ORDERED** denying in part and granting in part Plaintiffs' Motion for Summary Judgment (Doc. 55).

**IT IS FURTHER ORDERED** denying in part and granting in part Defendant's Motion for Summary Judgment (Doc. 56).

Dated this 24th day of September, 2020.

_____
Susan R. Bolton
United States District Judge